**GOLDEN EAGLE INSURANCE COMPANY, Plaintiff– Appellant,**

v.

**TRAVELERS COMPANIES, Defendant–Appellee.**

**No. 94–56211.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1996.

Decided Sept. 6, 1996.

As Amended on Denial of Rehearing Sept. 20, 1996.

Further Amended Opinion Dec. 24, 1996.

Richard P. Edwards, McNitt, Edwards & Schraner, San Diego, California, for plaintiff-appellant.

William C. Morison–Knox, Sonnenschein Nath & Rosenthal, San Francisco, California, for defendant-appellee.

Before: WIGGINS, THOMPSON and TROTT, Circuit Judges.

## ORDER

The amended opinion filed September 20, 1996, 95 F.3d 807, is further amended.

Appellant Golden Eagle Insurance Company's petition for rehearing is DENIED.

## OPINION

DAVID R. THOMPSON, Circuit Judge:

Golden Eagle Insurance Company brought this action in state court seeking a declaratory judgment that Charter Oak Fire Insurance Company[1] had a duty to defend Aero–Crete, Inc. in a construction defect case. Charter Oak removed the action to the federal district court. The district court granted summary judgment for Charter Oak. Golden Eagle appeals. The principal issue on appeal is whether the district court properly exercised its diversity jurisdiction over this declaratory relief action involving state law. *See, e.g., Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796 (9th Cir.1995).

We hold that the district court erred in exercising its jurisdiction to hear this case.

1. Erroneously sued as Travelers Companies.

2. Aero–Crete, as amicus, filed a short letter joining in the arguments of Golden Eagle, pursuant to Circuit Advisory Committee Note to Rule 29–1.

The case is a quintessential declaratory relief action between insurance companies arguing over a duty to defend the insured under state law. In such a case the district court is required to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and decide whether to hear the case. The district court did not do this. It simply decided the case. The court erred in so doing, but this error is harmless because, except for this appeal, the case has been completed and the district court correctly decided it on the merits under the applicable state law.

The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

### FACTS

Aero–Crete[2] performed concrete work in the construction of a San Diego apartment building. Upon completion, Pieri–Debbas Enterprises, the owner, sold the building. The Dale Village Apartment Company, a later owner, discovered alleged construction defects and sued Pieri–Debbas in state court for negligence, breach of implied warranty, and strict liability.[3] Pieri–Debbas cross-complained against Aero–Crete and its other subcontractors for indemnity and contribution.

Charter Oak and Golden Eagle had issued general liability insurance policies to Aero–Crete. Charter Oak's policies covered property damage resulting from an "occurrence" during the period from August 1, 1985, to August 1, 1988. Golden Eagle's policies covered the periods from July 1, 1989 to July 1, 1991, and from July 1, 1992, to July 1, 1993.

Golden Eagle defended Aero–Crete against Pieri–Debbas's cross-complaint in the state action. Charter Oak refused to defend Aero–Crete on the ground the alleged prop-

3. *Dale Village Apartment Co. v. Pieri–Debbas Enters. et al.,* San Diego Superior Court Case No. N54313.

erty damage did not "occur" during the period of any Charter Oak policy. This prompted Golden Eagle to file this action against Charter Oak in San Diego Superior Court for declaratory relief, indemnity, and contribution. Charter Oak removed the action to federal court on the basis of diversity of citizenship. The parties filed cross-motions for summary judgment regarding Charter Oak's duty to defend Aero–Crete in the underlying state action. The district court granted summary judgment for Charter Oak, concluding Charter Oak had no duty to defend Aero–Crete.

Back in state court, the underlying action of *Pieri–Debbas v. Aero–Crete* went to trial. Aero–Crete obtained a defense verdict, and that action is now concluded.

During the pendency of this appeal Aero–Crete filed its own state court action in the San Diego Superior Court against Charter Oak seeking damages for Charter Oak's failure to defend it against Pieri–Debbas's cross-complaint. Aero–Crete's complaint against Charter Oak alleged breach of an implied covenant of good faith and fair dealing, interference with prospective economic advantage and contractual relationships, malicious prosecution, abuse of process, and declaratory relief. Charter Oak removed that case to the United States District Court for the Southern District of California where it is now pending.[4]

This current appeal is Golden Eagle's appeal from the district court's decision on summary judgment in Golden Eagle's declaratory relief action against Charter Oak.

## II

## DISCUSSION

### A. Abstention

■ The complaint Golden Eagle filed in state court for declaratory relief was filed under California's declaratory relief statute, California Code of Civil Procedure Section 1060. When Charter Oak removed the case to federal court, based on diversity of citizenship, the claim remained one for declaratory relief, but the question whether to exercise

federal jurisdiction to resolve the controversy became a procedural question of federal law. *Haagen–Dazs Shoppe v. Born,* 897 F.Supp. 122, 126, 126 n. 2 (S.D.N.Y.1995); *Fischer & Porter Co. v. Moorco Int'l,* 869 F.Supp. 323, 326 (E.D.Pa.1994); *DeFeo v. Procter & Gamble Co.,* 831 F.Supp. 776, 779 (N.D.Cal.1993); *National R.R. Passenger Corp. v. Consolidated Rail Corp.,* 670 F.Supp. 424, 429 n. 7 (D.D.C.1987); 19 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4505, at 71–72 (2d ed. 1996); Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ¶ 10:33.5 (1996). Because the current issue involves only a choice of forum and is grounded in considerations of judicial economy and comity, federal law, rather than state law, governs whether the district court should abstain.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, is the procedural statute under which a federal court determines whether to exercise its jurisdiction to hear a case such as the present one. The Declaratory Judgment Act does not itself confer federal subject matter jurisdiction. *Staacke v. United States Secretary of Labor,* 841 F.2d 278, 280 (9th Cir.1988). There must be an independent basis for such jurisdiction. *Id.* The parties predicate subject matter jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. Because the parties satisfy the requirements for diversity jurisdiction, the district court had subject matter jurisdiction to hear this case. The question is whether the district court should, nevertheless, have remanded the case back to state court by exercising its judicial discretion not to hear it.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). There are, however, exceptions to this rule.

In *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court held that a district court is not required by the Declaratory Judgment Act to exercise its jurisdiction.

---

**4.** *Aero–Crete, Inc. v. The Travelers Ins. Co.,* No. 95–0070–IEG.

*Id.* at 494, 62 S.Ct. at 1175. More recently, the Supreme Court reaffirmed this holding and explained its rationale:.

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995).

In this circuit, we have held that "practicality and wise judicial administration" considerations "generally counsel against the exercise of federal-court jurisdiction over claims for declaratory relief that involve only state law questions and are brought during the pendency of a related state court proceeding. Certainly that is the case with insurance coverage disputes." *Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796, 801 (9th Cir.1995). *See also American Nat'l Fire Ins. Co. v. Hungerford,* 53 F.3d 1012, 1019 (9th Cir.1995); *Continental Cas. Co. v. Robsac Indus.,* 947 F.2d 1367, 1374 (9th Cir. 1991).

■ Although our case law has applied the *Brillhart* doctrine only in cases where a parallel proceeding exists in state court, nothing in the Declaratory Judgment Act requires a parallel state proceeding in order for the district court to exercise its discretion to decline to entertain the action. Clearly, the existence of a parallel state proceeding would be a major factor in the district court's consideration of "practicality and wise judicial administration," but the absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice. *See Wilton,* —— U.S. at ——, 115 S.Ct. at 2144 ("We do not attempt ... to delineate the outer boundaries of that discretion in other cases, for example, ... cases in which there are no parallel state proceedings").

In deciding whether a district court abuses its discretion by deciding to hear a declaratory relief action, we consider whether "there are circumstances present to warrant an exception to the general rule that the action belongs in state rather than federal court." *Karussos,* 65 F.3d at 799. When the district court offers no indication that it even considered the issue, and it is not clear that the exercise of jurisdiction is necessarily improper, the proper course is usually for this court to remand the matter to the district court. *Id.* at 799 n. 1.

In *Karussos,* we were confronted with a district court decision that went straight to the merits without first considering whether the court should hear the case. *Id.* at 799. While acknowledging *Wilton*'s holding that the district court was vested with the discretion whether or not to exercise jurisdiction, in *Karussos* we found no facts or circumstances in the record which could have made the exercise of federal court jurisdiction appropriate. *Id.* We concluded any further proceedings would be futile, vacated the district court's decision, and remanded with instructions to dismiss the case.

The parties don't want us to dismiss this case. Nor do they want us to remand it to the district court to permit that court to exercise its discretion to decide whether to hear it. *Cf. Karussos,* 65 F.3d at 799 n. 1. Instead, they want us to reach the merits of the case and resolve it. To this end, they argue that had the district court exercised its discretion it would have elected to hear the case and in so doing would not have abused its discretion. We disagree. As in *Karussos,* the parties have failed to point to any circumstance which would support the district court's exercise of discretion to hear this case.

■ Golden Eagle contends the underlying state action is not "parallel" because Charter Oak is not a party to the state action, and the issues are not the same. In *Karussos* we concluded that neither of these

circumstances warrants the exercise of federal jurisdiction. 65 F.3d at 800–01. It is enough that the state proceedings arise from the same factual circumstances. *Hungerford,* 53 F.3d at 1017.

■ Charter Oak argues the district court did not have discretion to decline jurisdiction because, unlike *Karussos* and *Hungerford* which were commenced in federal court, this action was originally brought in state court and removed to federal court. Because the present action was properly within the original diversity jurisdiction of the district court, removal was proper; because removal was proper, Charter Oak argues the district court is powerless to remand under 28 U.S.C. § 1447(c), as construed by the Supreme Court in *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 342–43, 96 S.Ct. 584, 588–589, 46 L.Ed.2d 542 (1976). We disagree.

The Declaratory Judgment Act provides federal district courts with discretion to dismiss · a case brought under the Act "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton,* —— U.S. at ——, 115 S.Ct. at 2140. The fact that the case originated in state court and was removed to federal court does not alter the district court's unique statutory discretion under the Declaratory Judgment Act.[5]

*Thermtron* does not require a contrary decision. Cases decided by the Supreme Court and by the federal Courts of Appeals since *Thermtron* have established that federal district courts have the authority to remand matters to state courts on grounds other than those found in § 1447(c). *See, e.g., Carnegie–Mellon Univ. ·v. Cohill,* 484 U.S. 343, 355, 108 S.Ct. 614, 621–22, 98 L.Ed.2d 720 (1988); · *Balazik v. County of Dauphin,* 44 F.3d 209, 217 (3d Cir.1995); *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497,

1501 (8th Cir.1992); *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1215 (3d Cir.), *cert. denied,* 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *Corcoran v. Ardra Ins. Co.,* 842 F.2d 31, 36 (2d Cir.1988); *Clorox v. U.S. Dist. Court,* 779 F.2d 517, 521 (9th Cir.1985); *IMFC Professional Servs. of Florida, Inc. v. Latin American Home Health, Inc.,* 676 F.2d 152, 160 (5th Cir. Unit B 1982).

■ Arguing that the Declaratory Judgment Act does not control this case, Charter Oak contends the gravamen of Golden Eagle's suit is a request for damages, and because it is, the declaratory relief claim is superfluous. and the Declaratory Judgment Act's discretionary power to dismiss the case does not come into play. This argument was explicitly rejected in *Karussos. See* 65 F.3d at 801. We reject it again here.

As in *Karussos,* the complaint in the present case seeks a declaration of the parties' duties with regard to defending and indemnifying the insured, as well as contribution for Charter Oak's failure to defend the insured, and indemnity. *Id.* As in *Karussos,* Golden Eagle's request for monetary relief is wholly dependent upon a favorable decision on its claim for declaratory relief. *Id.* The action is plainly one for declaratory relief.

Charter Oak also argues that although there is no related action now pending in state court, there is a related action now pending in the same federal district court which decided this case. In this circumstance, Charter Oak argues it would be inefficient to dismiss this case simply to have it refiled in state court, while retaining jurisdiction over the related action now pending in the district court.

Charter Oak's reliance on the pending district court action as a circumstance to distinguish this case from *Karussos* and *Hungerford* is unavailing. Both *Karussos* and

In *Kirkbride v. Continental Casualty,* 933 F.2d 729 (9th Cir.1991), we stated that the rule allowing a district court to abstain in a declaratory relief action did not apply because the party "did not file an action for declaratory relief in federal court during the pendency of the state action, but rather removed the action from state court." *Id.* at 734–35. Our decision in *Kirkbride* does not dictate a contrary result in this case. When deciding *Kirkbride,* we did not have the benefit of

the Supreme Court's holding in *Wilton.* Further, in *Kirkbride,* we addressed the FDIC's ability to remove an action arising under FIRREA. The applicable statute provides for broader removal authority and " 'evidences Congress' desire' that cases involving FDIC should generally be heard and decided by the federal courts.' " *Bullion Servs. v. Valley State Bank,* 50 F.3d 705, 707 (9th Cir.1995) (quoting *Kirkbride,* 933 .F.2d at 731– 32).

*Hungerford* make clear that "the propriety of the district court's assumption of jurisdiction is judged as of the time of filing, not the time of appeal." *Karussos,* 65 F.3d at 800; *Hungerford,* 53 F.3d at 1016.

We conclude the district court should have exercised its discretion under the Declaratory Judgment Act and should have declined to entertain this action; when it failed to do so, it erred. Without more, we would be obliged to vacate the district court's order and remand the case to the district court with instructions to remand it back to the state court. There is more, however.

In *Robsac,* the district court granted summary judgment for the insurer declaring that there was no coverage of alleged theft under its policy. Concluding the district court should not have exercised its discretion to grant declaratory relief, we reversed and remanded with instructions to dismiss. Although we found an abuse of discretion and reversed in *Robsac,* we were careful to acknowledge the argument against reversal when a case has been correctly completed at the district court level.

> It might be argued that where a district court improperly exercised jurisdiction to grant a declaratory judgment, but nonetheless reached a correct decision on the merits, it would, at least in some circumstances, be a waste of judicial resources for the court of appeals to vacate the judgment in order for a state court to duplicate the district court's efforts. Whatever the merits of such an argument, it would in any event fail here. In the first place, the case before us was decided on summary judgment and the expenditure of judicial resources was thus comparatively minimal. In the second, for reasons that do not warrant extensive discussion here, the district court's decision granting summary judgment was in error.

*Robsac,* 947 F.2d at 1374 n. 9.

Like *Robsac,* the present case was decided by summary judgment. Unlike *Robsac,* however, as we discuss below, the district court's summary judgment here was correct. Although the court abused its discretion by retaining and deciding the case, the court properly applied the relevant state law to the

undisputed material facts and came up with the right answer. Were the parties to proceed anew in state court, we are convinced they would get the same decision.

Rule 61 of the Federal Rules of Civil Procedure requires that federal courts "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *See also* 28 U.S.C. § 2111. This rule is applied to appellate courts as well. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). The principle underlying this rule of harmless error is that courts "should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *Id.* at 553, 104 S.Ct. at 848.

Here, the district court's error is harmless. We would do the state no favor if, invoking the principle of comity, we reversed the district court and remanded this case simply to have it prosecuted again in state court on the same facts and the same law. Given these circumstances, we elect as a matter of our discretion to overlook the district court's harmless error and consider this appeal on its merits.

### B. Merits

We review de novo a grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine, disputed issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

Under California law, an insurance carrier has a duty to defend a suit in which there is any potential for coverage under its policy. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Id.* (quot-

ing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993)). To determine whether there is a duty to defend, we compare the allegations in the complaint with the terms of the policy. *Id.* Facts extrinsic to the complaint may be considered in determining whether any potential for coverage existed at the inception of the underlying lawsuit. *Id.* at 291 & 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

 Golden Eagle contends there was extrinsic evidence that established a potential for coverage. The extrinsic evidence offered by Golden Eagle consists of the following: (1) a December 9, 1986, letter from the developer to Aero–Crete claiming the concrete on one floor had not set properly; (2) a March 25, 1987, letter from a subcontractor to the developer claiming extra expenses from unspecified problems attributable to the lightweight concrete subcontractor; (3) a March 14, 1988, letter from the developer to Aero–Crete claiming some of the concrete floors were "failing"; and (4) a chart prepared by plaintiff's counsel in the underlying state court action indicating the repairs which would be necessary to fix the floors.

Charter Oak's insurance policy defines "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policy also contains the following exclusions:

> Exclusion N: excludes coverage for "property damage to the Named Insured's products arising out of such products or any part of such products."
>
> Exclusion A(2)(d): excludes coverage for damage "to that particular part of any property ... upon which operations are

being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured."

> Exclusion A(3): excludes coverage for "property damage to work performed by the Named Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith."

Construing similar provisions, courts have held that an insured's faulty workmanship is not "property damage" under California law. *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696, 700–01 (9th Cir.1991); *St. Paul Fire and Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 892–93, 145 Cal.Rptr. 836 (1978). Exclusions such as those in the policy in this case eliminate coverage for the cost of repairing the insured's own work, which is considered a business risk of the contractor. *See, e.g., Diamond Heights Homeowners Ass'n v. National American Ins. Co.*, 227 Cal.App.3d 563, 571–73, 277 Cal.Rptr. 906 (1991); *Maryland Casualty Co. v. Imperial Contracting Co.*, 212 Cal.App.3d 712, 723–24, 260 Cal. Rptr. 797 (1989). In *Vieira*, this court held "that the nature of the repairs cannot create coverage where none exists." 930 F.2d at 701.

The three letters relied on by Golden Eagle indicate defective workmanship. This is excluded from coverage under the policy. The chart suggests that floor coverings would have to be removed and replaced in order to repair the concrete floors. These indicated repairs, however, cannot create coverage where none exists.

We conclude that neither the complaint in the underlying action nor the proffered extrinsic evidence raise the potential for coverage under any Charter Oak policy. We need not address Charter Oak's alternative arguments.[6]

---

**6.** One of Charter Oak's alternative arguments, and an alternative ground on which the district court relied in granting summary judgment, was that the underlying complaint alleged an "occur-

rence" after Charter Oak's policies had expired. Relying on *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 435 (9th Cir.1994), *cert. denied,* — U.S. —, 116 S.Ct. 1847, 134 L.Ed.2d 948

## III

### CONCLUSION

Although we conclude the district court abused its discretion by exercising its jurisdiction to hear this case, its error was harmless because the case has been completed and the district court's judgment is correct on the merits under California law. Were we to remand the case to the district court for remand back to state court, the state court would apply the same law to the same facts and arrive at the same result. A remand in these circumstances would generate unnecessary legal proceedings and waste judicial resources.

AFFIRMED.

(1996), the district court held that the time of an occurrence of property damage under a liability policy is when the property damage "manifests" itself, or becomes reasonably apparent to the owners. Golden Eagle contends that the "continuous trigger" rather than the "manifestation" theory applies, and under the continuous trigger theory, "an insurer must cover damage that either begins or progresses during its policy period." *Id.* at 433. We need not resolve this dispute because it is unnecessary to our decision. We note, however, that subsequent to our *Chems-*

*tar* decision, the California Supreme Court held that the continuous trigger theory rather than the manifestation theory applies in third party insurance disputes when the policy contains the standard "occurrence" language. *Montrose Chem. Corp. v. Admiral Ins.*, 10 Cal.4th 645, 42 Cal. Rptr.2d 324, 325–26, 913 P.2d 878, 880 (1995).