**SEAGATE TECHNOLOGY,
INC., Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY and CIGNA Property and Casualty Insurance Company, Defendants.**

**No. C–94–1999 DLJ.**

United States District Court,
N.D. California.

May 15, 1998.

Dean A. Morehouse, Jr., Mary E. Wilcox, Thelen, Marrin, Johnson & Bridges, LLP, San Francisco, CA, for Plaintiff.

Stephen A. Scott, Dean E. Pappas, Ropers, Majeski, Kohn & Bentley, San Jose, CA, for Defendants.

## ORDER

JENSEN, District Judge.

On April 8, 1998, the Court heard argument on cross motions for summary judgment regarding St. Paul Fire and Marine Insurance Company's duty to defend. Dean A. Morehous, Jr. and Mary E. Wilcox appeared on behalf of plaintiff Seagate Technology, Inc; Stephen A. Scott and Dean A. Pappas appeared for defendant St. Paul Fire and Marine Ins. Co. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS summary judgment for St. Paul and DENIES summary judgment for Seagate as to St. Paul's duty to defend.

## I.  BACKGROUND

A.  *Factual Background and Procedural History*

Seagate, a Delaware corporation with its principal place of business in California, manufactures disk drive storage devices for personal computers and small business machines. In June 1988, Amstrad, a United Kingdom corporation, began to purchase Seagate disk drives for its personal computers. In early 1989, Amstrad began selling PC 2386 personal computers into which the Seagate drives had been incorporated.

On September 11, 1991, Amstrad sued Seagate in Superior Court of California, Santa Cruz County, alleging that the ST277R drives, purchased from Seagate and incorporated into Amstrad's PC 2386 computer,

were defective. Amstrad filed an Amended Complaint in the California action on September 25, 1991.[1] Seagate answered the Amended Complaint and filed a cross-complaint against Amstrad. On April 13, 1992, the action was dismissed on *forum non conveniens* grounds. Amstrad refiled in the United Kingdom on December 11, 1992. Trial began on April 16, 1996 and concluded on July 31, 1996. On July 9, 1997 judgment was rendered in favor of Amstrad and against Seagate.

In September 1991, Seagate tendered its insurance coverage claim based on the Amstrad actions to CIGNA and St. Paul. By letter dated October 24, 1991, CIGNA denied coverage and expressly declined to provide Seagate with a defense against the Amstrad litigation. On June 4, 1992, St. Paul responded to Seagate's claim with a letter denying coverage of the Amstrad actions under its domestic and excess umbrella policies. Seagate further tendered its coverage claim on November 30, 1992. By letters dated March 2, 1993 and October 11, 1993, CIGNA and St. Paul, respectively, again denied coverage of the Amstrad actions.

On June 7, 1994, Seagate brought the present action against St. Paul and CIGNA. Seagate's complaint brings causes of action for breach of contract and tortious bad faith based in part on St. Paul's refusal to defend Seagate in the Amstrad actions. On February 20, 1998, Seagate and St. Paul brought cross-motions for summary judgment regarding St. Paul's duty to defend. These motions are now before the Court.

B. *Legal Standards*

1. *Cross–Motions for Summary Judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v.. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

On cross motions for summary judgment, the burdens faced by the opposing parties vary with the burden of proof they will face at trial. When the moving party will have the burden of proof at trial, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." William W. Schwarzer, *Summary Judgment Under the Federal Rules; Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–488 (1984).

In contrast, a moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric,* 809 F.2d at 630 *citing Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Kaiser Cement,* 793 F.2d at 1103–04.

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991).

---

**1.** Amstrad's Amended Complaint brought the following causes of action: (1) Breach of Contract, (2) Breach of Express Warranty, (3) Breach of Implied Warranty—Fitness for a Particular Purpose, (4) Breach of Implied Warranty—Merchantability, (5) Deceit, and (6) Negligent Misrepresentation. Exh. AA to Joint Appendix.

██ The evidence the parties present must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980). The party who will have the burden of proof must persuade the Court judgment that it will have sufficient admissible evidence to justify going to trial.

### 2. *Duty to Defend*

██ "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (citing *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)). An insurer's duty to defend litigation brought against its insured is broader than its duty to indemnify. *Gray,* 65 Cal.2d at 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). The insurer must furnish a defense when it learns of facts creating the potential of liability under the policy. *Id.* Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Horace Mann,* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. The existence of a disputed fact, determinative of coverage, establishes the duty to defend. *Amato v. Mercury Casualty Co.,* 18 Cal.App.4th 1784, 1789–90, 23 Cal.Rptr.2d 73 (1993).

## II. DISCUSSION

St. Paul issued umbrella excess liability policies to Seagate.[2] The umbrella policies provide defense obligations as follows:

We have no duty to defend any claim or suit for covered injury or damage made or brought against any protected person if your Basic Insurance has such a duty to defend . . . .

We'll have the right and duty to defend any claim or suit for *covered injury or damage* made or brought against any protected person if your Basic Insurance doesn't cover the claim or suit . . . .

Exh. GG to Joint Appendix ("JA"), Form 43942 at App. 006 (emphasis added). In this case, Seagate's basic insurer declined to cover the Amstrad claims. Therefore, a duty to defend arose if the Amstrad actions alleged potentially covered injury or damage.

The policies contain the following insuring agreement and definitions from which the scope of "covered injury" is ascertained:

*What This Agreement Covers*

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or fire damage that:

\* happens while this agreement is in effect; and

\* is caused by an event.

**Property damage means:**

\* physical damage to tangible property of others, including all resulting loss of use of that property; or

\* loss of use of tangible property of others that isn't physically damaged.

*See* Exh. GG to JA, Form 43942 at App. 005.

██ Under these definitions of "property damage," the duty to defend could only arise if the damage or injury alleged by Amstrad could be read to constitute "physical damage to tangible property of others" or "loss of use of tangible property of others that isn't physically damaged." The second type of property damage—loss of use—is not at issue in this case.[3] Instead, Seagate claims that the

---

**2.** St. Paul also issued primary policies to Seagate. Seagate conceded at oral argument that no duty to defend these actions arose from the St. Paul primary policies. The duty to defend arises, if at all, from the St. Paul umbrella policies. Therefore, the Court will only consider whether the Amstrad lawsuits triggered a duty to defend under the St. Paul umbrella policies.

**3.** In its papers and comments at oral argument, Seagate does not argue that the duty to defend is premised on the "loss of use" prong of the "property damage" definition.

Amstrad lawsuits triggered a duty to defend because these suits alleged physical damage to Amstrad's inventory.

The parties dispute whether Amstrad's allegations raised the possibility that the defective disk drives caused "physical damage" to Amstrad's computers. Defendant relies on *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696 (9th Cir.1991), and *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750 (9th Cir.1996), for the proposition that the incorporation of a defect into the property of another cannot constitute "physical damage to tangible property."

In *Vieira*, a general contractor hired Vieira to install drywall in the rooms and attics of three housing projects. *Id.* at 697. The project owners subsequently sued the general contractor alleging that Vieira had failed to properly install the drywall. *Id.* The general contractor cross-claimed against Vieira. *Id.* Interpreting a policy provision identical to the one in the instant case, and applying California law, the Ninth Circuit held that the diminution in value of the housing projects was not "physical damage to tangible property." *Id.* at 701. The court also rejected Vieira's argument that, even if the diminution in value is not covered damage, separate damage was caused by cutting holes in the roofs to install drywall in the attics. The court held that "the nature of the repairs cannot create coverage where none exists." *Id.*

In *Golden Eagle*, a subsequent owner of an apartment building sued the original owner for construction defects. 103 F.3d at 752. The original owner cross-complained against Aerocrete who had performed concrete work in the construction of the building. *Id.* Following *Vieira*, the court concluded that the faulty workmanship did not raise the possibility of coverage for "physical injury" to the property. *See id.* at 757.

Seagate argues that these Ninth Circuit cases do not control the instant case because of a "clarification" of the law provided in the California Court of Appeal decision in *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1, 93, 52 Cal.Rptr.2d 690 (1996). In *Armstrong*, the court considered whether the installation of asbestos-containing building materials (ACBM) into buildings causes physical injury to tangible property. *Id.* at 94, 52 Cal. Rptr.2d 690. After noting that the release of asbestos fibers causes a "physical injury," the *Armstrong* court asserted that even in cases where there was no release of fibers, "if Armstrong is held liable for the mere presence of ACBM, the injury to the buildings is a physical one." *Id.* at 91, 52 Cal. Rptr.2d 690. The court explained:

> Once installed, the ACBM, whether in the form of insulating pipe coverings, fireproof tile, acoustical ceiling finishes, or the like, is physically linked with or physically incorporated into the building and therefore physically affects tangible property. We agree with the formulation put forth by the Seventh Circuit Court of Appeals that the term "physical injury" covers "a loss that results from physical contact, physical linkage, as when a potentially dangerous product is incorporated into another and, because it is incorporated and not merely contained (as a piece of furniture is contained in a house but can be removed without damage to the house), must be removed, at some cost, in order to prevent the danger from materializing."

*Id.* at 91–92, 52 Cal.Rptr.2d 690 (quoting *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 810 (7th Cir.1992), *cert. denied*, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267).

Seagate asks this Court not to follow *Vieira*, but instead to determine that *Armstrong* has clarified or changed California law such that the rule announced in *Vieira* is either no longer good law, or should be limited in its application to cases involving defective work by contractors. Seagate points out that the court in *Armstrong* cited approvingly to *Eljer*, in which the Seventh Circuit disagreed with *Vieira*. According to Seagate, this suggests that *Vieira* no longer reflects the current state of California law.

The Court finds that *Vieira* is still good law. *Armstrong* expressly distinguished *Vieira*, and in no way overruled that case. *Armstrong* involved suits by building owners against ACBM manufacturers based on the inherently dangerous product that had been introduced into their property. The holding turns in part on the nature of asbestos. The

*Armstrong* decision cannot be read to create an absolute rule that the introduction of any defective product into another product inflicts physical injury upon the host product. If California courts seek to announce such a rule, they may do so in future cases. In the meantime, this Court is bound to follow *Vieira* unless the facts of the instant case are analogous to those in *Armstrong*.

The instant case is distinguishable from *Armstrong*. The allegations in Amstrad's complaints do not suggest that Seagate's disk drives can be considered inherently dangerous products like asbestos. A defective disk drive does not injure a host computer upon incorporation. Instead, the drive only inflicts physical injury on the computer if it actually damages other parts of the computer.

Amstrad's complaints contain no allegation that the defective drives did or could harm other components of the host computers. Instead, the allegations in the Amstrad actions relate only to the failure of the Seagate drives. *See* Exh. AA to JA (Amended Complaint in California action) at ¶ 21 (design defects could render Seagate ST277R drive incapable of performing its functions as a 65 megabyte hard disc drive), ¶ 22 (data previously recorded cannot be recovered and data cannot be recorded); ¶ 24 (the PC2386 personal computer may suffer hard disc drive failure rendering the computer unusable); *see also* Exh. BB to JA (Points of Claim in United Kingdom action) at ¶¶ 92–96 (alleging damages in the form of replacement costs, lost sales, and general loss of business). While Amstrad's complaints allege loss of customer's information, loss of business and damage to Amstrad's reputation, absent from the complaints is any suggestion that components of the host computer, other than the Seagate drives, suffered damage.[4]

■ Unlike *Armstrong*, which involved an inherently dangerous product, the Amstrad actions are cases alleging defective design or manufacture of a product. This distinction is significant. As a general matter, the risk of replacing or repairing a defective product is considered a commercial risk which is not passed on to a liability insurer. *See Maryland Casualty Co. v. Reeder*, 221 Cal.App.3d 961, 967, 270 Cal.Rptr. 719 (1990). This rule is designed to prevent liability insurance from serving as a warranty or guarantee of an insured's product. *See Western Employers Ins. Co. v. Arciero & Sons, Inc.*, 146 Cal.App.3d 1027, 1031–32, 194 Cal.Rptr. 688 (1983) (contractor to stand its own replacement and repair losses while insurer takes on risk of injury to the property of others). In the California action, Amstrad sought recovery of damages for breach of contract, breach of several warranties, deceit and negligent misrepresentation. *See* Exh. AA to JA. The United Kingdom action sought recovery on comparable theories. *See* Exh. BB to JA at ¶ 48. In both of these actions, Amstrad sought recovery of damages resulting from the failure of Seagate's product to perform as promised or warranted. Unlike in *Armstrong*, there is no allegation here that Seagate could be liable on a product liability theory for an inherently dangerous product. As such, the construction defect cases control, not *Armstrong*.

■ For these reasons, the Court must follow the rule, distinguished in *Armstrong*, that "physical incorporation of a defective product into another does not constitute property damage unless there is physical harm to the whole." *See Armstrong*, 45 Cal. App.4th at 92, 52 Cal.Rptr.2d 690 (citing, *inter alia, St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 892, 145 Cal.Rptr. 836)). Here, there is no such allegation of physical harm to the whole. Accordingly, the Amstrad actions did not allege "property damage" within the meaning of the St. Paul umbrella policies, and therefore, St. Paul did not have a duty to defend these actions.

## III.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS St. Paul's summary judgment motion as to its to duty to defend, and DE-

---

4.  Seagate points out that the Amstrad actions allege damage to computer components resulting from repair efforts. *See* Seagate Opp. at 4–5. *Vieira* makes clear that damage arising from these repair efforts cannot create coverage where none exists. *Vieira*, 930 F.2d at 697.

NIES Seagate's summary judgment motion as to St. Paul's duty to defend.

IT IS SO ORDERED.