Warner v. Frontier Insurance          CV-02-451-JD  10/29/03  P
                UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Lynn Warner

        v.                              Civil No. 02-451-JD
                                        Opinion No. 2003 DNH 184
Frontier Insurance Co.

        v.

Clarendon National Insurance Co.


                            O R D E R


        Lynn Warner, who was injured when a Ryder rental truck
collided with her vehicle on a road in Hopkinton, New Hampshire,
seeks a declaratory judgment against Clarendon National Insurance
Co. ("Clarendon"), reinsurer to Ryder's now-insolvent insurance
carrier, Frontier Insurance Company ("Frontier").  Warner has
moved for summary judgment on her sole claim for a declaration
that Frontier's policy provides coverage in the amount of $2
million to both the driver of the truck, Scott Brown, and its
lessee, Jennifer Corlett, for Warner's injuries (document 10).
Clarendon objects (document 16).[1]

_____

        [1]Warner and Clarendon agree that Frontier is subject to an
"Order of Rehabilitation" issued by the New York County Supreme
Court which bars lawsuits against the company or its trustee.
Warner does not seek summary judgment against Frontier, which has
not appeared in or otherwise defended this action.

<u>Background</u>

The facts of this case are not in dispute. On or about September 8, 1999, Corlett leased a truck owned by Ryder TRS, Inc. ("Ryder"). Just over a week later, on September 16, 1999, the truck collided with a vehicle in which Warner was traveling.[2] Brown was driving the truck at that time. Warner was injured as a result of the collision.

At the time of the collision, Frontier was the insurer of Ryder's automobiles under a commercial auto policy. Clarendon was the reinsurer of Frontier's obligations under the policy. In section II, Frontier's policy provides coverage for the liability of an "insured" arising out of an accident with one of Ryder's automobiles. The term "insured" was defined to include both Ryder and "[a]nyone else while using with [its] permission a covered 'auto,'" and thus encompasses both Corlett and Brown. The parties agree that the policy has liability limits of $2 million. Warner, however, contends that the policy provides $2 million in liability coverage per insured per accident, while Clarendon asserts that the limitation applies on a strictly per-

_____

[2]It is unclear from the record, but also immaterial for purposes of this motion, whether Warner was the driver of or a passenger in the vehicle involved in the collision.

2

accident basis, i.e., without regard to the number of insureds.

The policy also contains a number of endorsements. One of them, entitled "STAR-7," amends section II to include the following: "The insurance coverage provided by this policy to a 'rentee' is subject to the terms, conditions, restrictions, and limitations contained in the rental agreement between [Ryder] and such 'rentee.'" Upon renting the truck which later collided with Warner's vehicle, Corlett signed a document manifesting her assent to the "terms and conditions of the Rental Agreement."

Paragraph 10A of the "Terms and Conditions of Rental Agreement," entitled "Liability Protection," provides that

> Ryder TRS provides protection for bodily injury . . . resulting from use or operation of the Vehicle, limited as follows: . . . Ryder TRS' protection applies only to the extent it is needed to meet, on a cumulative basis with all such insurance and/or other protection available to the driver . . . the minimum financial responsibility limits and/or minimum no fault benefits required by applicable law.

Warner does not contest that New Hampshire law is "applicable law" or that the minimum financial responsibility limit under New Hampshire law is $25,000 for bodily injury to one person. See Revised Statutes Annotated ("RSA") 264:20. Clarendon therefore maintains that STAR-7 limits the coverage available to Corlett and Brown under the Frontier policy to $25,000.

Warner argues, however, that the STAR-7 endorsement

3

contradicts the language of another endorsement, STAR-3. STAR-3 amends Section IV of the policy, entitled "Business Auto Conditions," specifically paragraph B, entitled "General Conditions." STAR-3 adds the following language as subparagraph B.5, labeled "Other Insurance": "It is agreed that the coverage provided under this policy is primary insurance with respect to the 'rentee' or driver as an 'insured' under an 'auto' rental contract."

In response to correspondence from Warner's counsel, Frontier's claims administrator took the position that the policy provided $25,000 in coverage for the truck rented by Corlett, and offered to settle Warner's claim for that amount. On or about August 26, 2002, Warner filed a petition against Frontier in Strafford County Superior Court under the New Hampshire declaratory judgment statute, RSA 491:22. The petition requested a declaration that the policy afforded $2 million in coverage to each of Brown and Corlett for Warner's personal injury claims. Frontier removed the action to this court on diversity grounds.[3]

Around the same time, Warner filed suit for her injuries against Brown, Corlett, Ryder, and Idaho Car Rental, Inc., in Strafford County Superior Court. That action was removed to this

---

[3]Warner later filed an amended petition in this court adding Clarendon as a defendant.

4

court on October 7, 2002.  An answer was submitted by each defendant but Ryder, who filed a suggestion of bankruptcy.  On June 13, 2003, Warner filed an assented-to motion, which was allowed, to stay that case based on the pendency of this action.

Discussion

Clarendon asserts that Warner lacks the "present legal or equitable right" to the coverage under the policy necessary to maintain a declaratory judgment action because she has yet to secure any determination of liability against Corlett or Brown.  In a related vein, Clarendon argues that Warner "is seeking an adjudication of the rights of Corlett and Brown, non [*sic*] parties to this action."

Some courts have allowed an injured party to bring a declaratory judgment action against an insurer to determine the applicability of its coverage, even in the absence of a determination of the insured's liability to the injured party. See, e.g., Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941); Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992); Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 353 (3rd Cir. 1986); but see Laguna Publ'g Co. v. Employers' Reins. Co., 617 F. Supp. 271, 273 (C.D. Cal. 1985); 12 James Wm.

5

Moore et al., Moore's Federal Practice § 57.82[3] (3d ed. 2003).[4] As the Seventh Circuit recognized in Bankers Trust, however, there is no absolute rule either requiring or forbidding a court to exercise jurisdiction over this sort of an action. 959 F.2d at 680. Instead, the court enjoys a measure of equitable discretion in deciding whether to hear the injured party's declaratory judgment action. See id. at 682; Vt. Mut. Ins. Co. v. Everette, 875 F. Supp. 1181, 1186 (E.D. Va. 1995).

In general, whether to entertain an action for declaratory relief involves "considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir. 1992) ("Although declaratory relief frequently serves a valuable purpose and courts must remain reasonably receptive to suitable requests for it, . . . there are limits to that receptivity"). One of the considerations to be weighed in exercising jurisdiction over a declaratory judgment action is the extent to which the sought-after relief would serve as practical guidance in putting the controversy to rest. See Rhode Island v. Narranganset Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994).

The parties here agree that declaring the amount of coverage

_____

[4]Neither this court nor the First Circuit appears to have previously addressed this issue.

6

available under Frontier's insurance policy as compensation for Warner's injury would resolve the controversy between her and Frontier (and, by extension, Clarendon). They also acknowledge, however, that the same issue would remain in dispute between the insurers and Brown and Corlett, who are not parties to this action and therefore cannot be bound by it. As a result, any judgment here as to the amount of coverage would have limited practical effect.

For example, if the court determines that the policy provides for coverage in an amount which turns out to be less than Warner's recovery against Corlett and Brown in the underlying tort suit, they will likely bring an action of their own against Frontier and Clarendon seeking the same relief which Warner seeks here. Furthermore, depending on the outcome of the tort action, Ryder might also seek to litigate the issue of coverage limits under the policy. Under these circumstances, prudential considerations weigh against the exercise of the court's equitable jurisdiction over Warner's claim. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co., 117 F.R.D. 321, 322-23 (D. Mass. 1987) (refusing to dismiss tort claimant as party to action between insurer and insured, because "declaratory judgment would be of little use . . . if [claimant] can relitigate the precise issue" in

7

subsequent suit); <u>State Farm Fire & Cas. Co. v. Kessler</u>, 1993 WL 147195, at *3 (E.D. Pa. May 4, 1993) (declining to hear insurer's declaratory judgment action against insured in absence of co-insurer and tort claimants).

Additionally, Corlett's absence is problematic as a practical matter, given the nature of one of Warner's arguments as to the amount of coverage. In her reply to Clarendon's objection to her summary judgment motion, Warner argues at length that STAR-7 does not reduce the coverage available to Corlett under the policy because the agreement which she signed to limit her insurance on the rental truck "does not comply with the [asserted statutory] requirement that policy endorsements . . . clearly explain what coverages . . . have been reduced or eliminated." Corlett is the party best situated to make this argument and to give her version of the underlying facts, which do not appear in the summary judgment record. Issuing a declaration as to the extent of Corlett's coverage without the benefit of her position on the issue would be unwise.

Corlett's and Brown's absence from this case also creates the risk of prejudicing their positions in the underlying personal injury case, despite the fact that any decision the court reached in this action would not bind them as a legal matter. For example, a declaration that only $25,000 in coverage

8

was available might pressure them to settle the claim for more than the policy limit for fear of subjecting themselves to liability for a yet-larger uninsured judgment. Such a result would be unfair to Corlett and Brown as the outcome of litigation in which they did not even participate.[5] Cf. Md. Casualty, 312 U.S. at (allowing insurer to maintain action against insured and injured party); Fed. Kemper, 807 F.2d at 353-54 (allowing injured parties to continue litigating coverage action in insured's absence, where insurer had brought action against insured and injured parties, but insured had been defaulted); Vt. Mutual, 875 F. Supp. at 1186-87 (same).

Warner argues that New Hampshire law allows her to bring a declaratory judgment action against Frontier by virtue of her status as "[t]he [p]laintiff in the underlying lawsuit which gives rise to insurance coverage question . . . ." It is true that the New Hampshire Supreme Court has exercised jurisdiction over an injured party's petition for declaratory relief against the tortfeasors' and his own insurance carriers. See Auclair v. Allstate Ins. Co., 118 N.H. 626, 628 (1978). Although the court in Auclair resolved the suit on the merits (by declaring that the

---

[5]Corlett and Brown are represented in Warner's personal injury case by the same counsel representing Clarendon here. It is unclear whether they have retained individual representation with respect to Warner's claim.

insurer of one of the tortfeasors had to defend and indemnify him against the plaintiff's claim), the opinion does not include any analysis of whether hearing the action was an appropriate exercise of jurisdiction.[6] Id. at 631.

Both parties cite Portsmouth Hosp. v. Indem. Ins. Co., 109 N.H. 53 (1968), to support reaching the merits of Warner's claim despite the absence of Corlett and Brown from this proceeding. In Portsmouth Hospital, the New Hampshire Supreme Court held that a hospital could sue its malpractice insurer for a declaration that instituting legal action to discharge an incapacitated patient over the insurer's objection would not void its coverage, without having to join the patient's guardians as parties. Id. at 54-55. Although the guardians had a potential malpractice claim against the hospital, this interest was not jeopardized by the declaratory judgment action--if the court determined that their ward's discharge would have voided the policy, the hospital presumably would not have followed through on that course of action, and because the court ruled to the contrary, the

_____

[6]Warner relies on Smith v. Liberty Mut. Ins. Co., 130 N.H. 117 (1987), as authority for her ability to bring an action against Frontier and Clarendon to determine their coverage to Corlett and Brown. The plaintiff who sought a declaratory judgment as to insurance coverage in Smith, however, was the insured himself, who had been sued by a third party, rather than the third party herself. Id. at 119.

guardians' interest in the coverage was protected.  As an action by the insured, rather than the injured party, <u>Portsmouth Hospital</u> did not raise the concerns of multiplicitous litigation and potential prejudice to non-parties which trouble this case.

Accordingly, the New Hampshire Supreme Court has never expressly held that an <u>injured party</u> can maintain a declaratory judgment action against a tortfeasor's insurance carrier in the absence of the insured.  In any event, even a clear state law decision on the issue would not dictate that this court exercise its discretion in favor of hearing Warner's declaratory judgment claim.  <u>See</u> <u>Golden Eagle Ins. Co. v. Travelers Cos.</u>, 103 F.3d 750, 753 (9th Cir. 1996) (state law does not control whether federal court hears declaratory judgment action removed there on diversity grounds), <u>overruled on other grounds by</u> <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1227 (9th Cir. 1998); <u>see also</u> <u>Fed. Kemper</u>, 807 F.2d at 354 (declining to treat state law as dispositive of federal jurisdiction over suit for declaratory relief).

Likewise, this court cannot dictate whether a New Hampshire court should exercise jurisdiction over this action.  If the parties are correct that a New Hampshire court would do so, however, that fact militates in favor of declining to hear this case and allowing the Strafford County Superior Court to make its

11

own jurisdictional determination. See El Dia, 963 F.2d at 492-94 (availability of relief in state court weighs against exercising federal jurisdiction over declaratory judgment claim). At best, New Hampshire law is unsettled as to the ability of an injured party to seek declaratory relief against a tortfeasor's insurer under the circumstances presented here. This fact also militates against the exercise of this court's jurisdiction. See United States Liab. Ins. Co. v. Wise, 887 F. Supp. 348, 352 (D. Mass. 1995) (refusing to hear declaratory action arising out of coverage dispute in face of unsettled dispositive state law, which made state court the most efficient forum).

For the foregoing reasons, the court declines to exercise its discretion to hear Warner's declaratory judgment claim. After refusing jurisdiction, a federal court has the authority to remand a declaratory judgment action removed there on diversity grounds back to the state court. See Golden Eagle, 103 F.3d at 756; 12 Moore § 57.42[2][d]. Remand, rather than dismissal, is the proper course here.

Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 10) is denied.  The case is remanded to the Strafford County Superior Court.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
U.S. District Judge

October 29, 2003

cc:  Mark D. Wiseman, Esquire
     Doreen F. Connor, Esquire
     Edward J. Barshak, Esquire