242 F.3d 1102 (9th Cir. 2001)
 UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania corporation, Plaintiff,
and
TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,
v.
R&D LATEX CORPORATION, a Georgia corporation; ROYALTY CARPET MILLS, INC., a California corporation, Defendants,
and
MYDRIN, INC., for itself and as successor in interest to R&D Latex Corp., Defendant-Appellee.
MYDRIN, INC., for itself and as successor in interest to R&D Latex Corp., Plaintiff-Counter Defendant-Appellee,
v.
TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, Defendant-Counter-Claimant-Appellant,
and
WILLIAM C. MORISON-KNOX and MICHAEL D. PROUGH, Appellants.
 No. 99-55259, 99-55966, 99-56078
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 9, 2000
Filed March 15, 2001
 
 [Copyrighted Material Omitted]
 Michael D. Prough, Morison-Knox Holden Melendez & Prough, LLP, Walnut Creek, California, for the appellants.
 John D. Shaeffer and Christine Pagac, O'Donnell & Shaeffer, Los Angeles, California, for the appellee.
 Appeal from the United States District Court for the Central District of California Lourdes G. Baird, District Judge, Presiding. D.C. No. CV-94-04140-LGB D.C. No.CV-99-303 LGB
 Before: John T. Noonan, Stephen S. Trott and Marsha S. Berzon, Circuit Judges.
 BERZON, Circuit Judge:
 
 
 1
 These three appeals are the latest round in a seemingly never-ending bout of litigation between Mydrin, Inc., and Travelers Casualty and Surety Company (formerly, Aetna Casualty and Surety Company), one of Mydrin's insurers. All three appeals stem from a dispute over Travelers' coverage of Mydrin for losses resulting from state-court lawsuits filed against Mydrin by two of its customers.
 
 
 2
 Travelers brings two appeals. The first is from an order of the district court declining to exercise its discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. S 2201(a), over a declaratory relief complaint filed by Travelers against Mydrin in federal district court (the"1994 action"). The second is from the district court's order declining jurisdiction and remanding a separate declaratory relief action subsequently brought in state court by Mydrin against Travelers and removed to the district court by Travelers (the "removed action"). Finally, two of Travelers' attorneys appeal the district court's imposition of Rule 11 sanctions upon them for their conduct in removing Mydrin's state-court action.
 
 
 3
 We dismiss the first appeal for lack of jurisdiction, reverse and remand in the second, and reverse in the third. Because we reject the district court's order declining jurisdiction over the removed action, the protracted jurisdictional squabbles in this litigation are finally at an end, and the district court may proceed to determine the merits of the coverage dispute.
 
 I. Background
 
 4
 The background of this insurance-coverage litigation is well laid out in this court's decision, United National Insurance Co. v. R & D Latex Corp., 141 F.3d 916 (9th Cir. 1998) [hereinafter "R&D Latex"]. We draw largely from that opinion in this section. Because after years of litigation jurisdiction is still the principal issue in dispute, there are few facts but a great deal of procedural history to relate.
 
 A. The Underlying Litigation
 
 5
 Mydrin, Inc., and its predecessor in interest, R & D Latex Corporation, manufactured and sold glue for use in tufted carpeting. Two carpet makers, Royalty Carpet Mills ("Royalty") and Western Dyeing and Finishing Corporation ("Western"), brought separate actions against Mydrin in Los Angeles Superior Court alleging that Mydrin's product was defective. The complaints asserted claims for, inter alia, breach of contract and breach of express and implied warranties. The Western action was settled by the parties in early 1998, but, at least as of the time of oral argument, the Royalty suit was still pending.
 
 
 6
 Travelers, one of Mydrin's several insurers,[1] initially agreed to defend Mydrin, but reserved the right to be reimbursed for the costs of doing so should it later be determined that insurance coverage was not available. Travelers claims to have spent over $300,000 defending Mydrin in the underlying cases before cutting off financial support in 1994.
 
 B. Travelers' 1994 Action
 
 7
 In October 1994, Travelers brought suit against Mydrin, Royalty, and Western in the Central District of California seeking two remedies: (1) a declaratory judgment that Travelers had no duty to defend and/or indemnify Mydrin in either the Royalty or Western action; and (2) a reimbursement of defense costs already advanced in the two cases. Travelers' suit, along with similar ones brought by two of Mydrin's other insurers (United National Insurance Company and Birmingham Fire Insurance),[2] was assigned to Judge Real.
 
 
 8
 The district court granted summary judgment in favor of United, and several weeks later also granted partial summary judgment in favor of Travelers on its claim for declaratory relief regarding its duties to defend and to indemnify Mydrin in the Royalty action. Because Travelers also raised claims for declaratory relief relating to the Western action and sought reimbursement of defense costs in both cases, the decisions granting the two summary judgment motions did not constitute a final disposition of the consolidated cases. Travelers and Mydrin remedied this lack of finality by entering into a stipulation that, because the coverage issues related to the Western action were virtually identical to those of the Royalty action, the Royalty order was "deemed to adjudicate" the Western action as well. As part of that same stipulation, Travelers "dismiss[ed] without prejudice its . . . claim for relief for reimbursement of defense costs."
 
 
 9
 Once the stipulation had been implemented by the district court, Mydrin appealed, arguing inter alia that the district court erred in exercising its discretionary jurisdiction under the Declaratory Judgment Act over the consolidated cases.[3] This court vacated the judgment and remanded to the district court to consider the propriety of its exercise of discretionary jurisdiction. United Nat'l Ins. Co. v. Mydrin, Inc., No. 9555733, 1996 WL 436508, at *1 (9th Cir. Aug. 2, 1996).
 
 
 10
 On remand, the district court, over Mydrin's objection, summarily reaffirmed its earlier decision, after finding that jurisdiction was proper. The district court did not, however, state its reasons for asserting jurisdiction. When Mydrin appealed a second time, we again returned the case to the district court to consider the jurisdictional question, holding that the requirement that the district court articulate its rationale for exercising jurisdiction was the law of the case, and that thedistrict court was required to abide by it. Additionally, we held that even if it had jurisdiction, the court should not have granted summary judgment to United or Travelers because issues of material fact remained in the case. In remanding to the district court, we ordered the case reassigned to a new district judge, stating:
 
 
 11
 Judge Real has twice granted summary judgment to United National and [Travelers] and has failed to articulate his reasons for exercising discretionary jurisdiction. In light of the history of this litigation, we conclude that if this case were before him for a third time he would have substantial difficulty in putting his previously expressed views out of his mind.
 
 
 12
 R&D Latex, 141 F.3d at 919-20.
 
 
 13
 The case was reassigned to Judge Baird. In December 1998, the district court declined to exercise discretionary jurisdiction under the Declaratory Judgment Act, and therefore dismissed the 1994 action without prejudice. The court found the exercise of jurisdiction inappropriate for several reasons, principally because disposition of the controversy would have entailed needless determination of state law issues overlapping those raised in the underlying litigation.
 
 
 14
 Although the district court's dismissal of the case rested on a decision not to exercise discretionary jurisdiction, it also noted an unresolved question regarding subject matter jurisdiction. Travelers' complaint had not pled facts adequate to make out diversity jurisdiction, nor had it alleged the existence of federal question jurisdiction. Subject matter jurisdiction is a necessary predicate to the issuance of a declaratory judgment, so if subject matter jurisdiction over Travelers' action could not be established, the question whether to exercise discretionary jurisdiction would not arise. American Casualty Co. v. Krieger, 181 F.3d 1113, 1118 (9th Cir. 1999). For purposes of the dismissal order, the district court assumed that Travelers could properly plead diversity, and proceeded to dismiss the action on grounds of discretionary jurisdiction under the Declaratory Judgment Act.
 
 
 15
 Travelers filed a motion for reconsideration, attacking the basis for the dismissal and explaining, with attached evidentiary support, that the parties were in fact diverse. Shortly thereafter, Travelers filed a notice of appeal, stating in the notice that pursuant to Federal Rule of Appellate Procedure 4(a)(4)(C), the appeal was tolled pending the district court's resolution of Travelers' motion for reconsideration.
 
 
 16
 After full briefing on the issue, the district court denied reconsideration of its dismissal order. On the same day, it issued an order to show cause ("OSC") requesting that Travelers plead the principal places of business of the parties in order to demonstrate diversity.
 
 
 17
 Disappointed with the dismissal of its declaratory judgment action, Travelers responded to the OSC with what appears to be a bit of legal gamesmanship. It stated that it had "interpreted" the OSC "as providing leave (indeed requiring) Travelers to file an amended complaint," and submitted a complaint repleading the reimbursement claim it had dropped over three years earlier, ostensibly so as not to waive its right to repayment.[4] Travelers then argued that the district court's jurisdiction over the newly resurrected reimbursement claim was mandatory, and that the existence of mandatory jurisdiction with respect to that claim required the court to exercise its discretionary jurisdiction over the just-dismissed claim for declaratory relief.[5] Mydrin opposed the amendment, arguing that the OSC sought only correction of Travelers' faulty diversity pleading, and that Travelers could not rely on that order to revive its reimbursement claim.
 
 
 18
 The district court never adjudicated the controversy as to whether Travelers could retrieve the reimbursement claim from the dustbin to which it had been relegated years earlier. Instead, the district court concluded that, in view of Travelers' notice of appeal, it lacked jurisdiction over what it construed as Travelers' "motion" for leave to amend.
 
 C. Mydrin's Removed Action
 
 19
 Two weeks after the district court dismissed Travelers' complaint, Mydrin brought suit against Travelers in Los Angeles Superior Court seeking a declaration that Travelers had a duty to defend and indemnify Mydrin in the underlying litigation. Travelers timely removed Mydrin's action to the Federal District Court for the Central District of California on grounds of diversity.
 
 
 20
 When removing Mydrin's action, Travelers' attorneys submitted a pleading that would later trigger the imposition of Rule 11 sanctions by Judge Baird: They filed a notice of related cases indicating that the removed case should be assigned to Judge Real--from whom this court had specifically taken away the earlier, related case--and only in the alternative to Judge Baird--to whom the related case had been reassigned. Travelers' Notice of Related Cases at 1 ("Because the Honorable Manuel L. Real has addressed the merits and substance of this dispute on three earlier actions, and the Honorable Lourdes G. Baird has addressed only a discrete procedural issue following the second remand from the Ninth Circuit . . . Travelers respectfully submits that this matter should be related to Judge Real for all purposes. . . ."). This brazen suggestion notwithstanding, the case was eventually assigned to Judge Baird.
 
 
 21
 Shortly after removing Mydrin's action, Travelers filed a counterclaim seeking reimbursement for the money it had spent defending Mydrin. The upshot was that the district court once again had before it a request for declaratory judgment on Travelers' duty to Mydrin in the underlying litigation, and a claim by Travelers for reimbursement of its costs already expended. And once again, battle was joined not on the merits but on the issue of jurisdiction.
 
 
 22
 Mydrin moved for the district court to decline jurisdiction and remand the case to state court, a motion Travelers opposed on the ground that federal jurisdiction over the reimbursement counterclaim is mandatory. The district court sided with Mydrin, remanding the case to state court for reasons similar to those supporting its dismissal of the 1994 action, and holding that the counterclaim did not provide an independent, nondiscretionary basis for jurisdiction but instead was entirely derivative of Mydrin's claim for declaratory relief. Travelers appeals that order--the second on today's bill of fare.
 
 D. Rule 11 Sanctions
 
 23
 The same day it issued the remand order, the district court issued an order to show cause why Travelers' three attorneys of record should not each be sanctioned $10,000 pursuant to Federal Rule of Civil Procedure 11 for making statements in the notice of related cases that the court deemed disingenuous. Following a hearing, the district court imposed sanctions on two of the three lawyers in the amount of $1,029 each.[6] To arrive at that figure, the court began with the number of hours (6) that Judge Baird and Judge Morrow (to whom the case was first randomly assigned) spent in determining that Judge Baird should hear the case, multiplied that number by the National Law Journal's estimate of the average hourly billing rate of partners in Los Angeles law firms ($343), and then divided that sum ($2058) by two.
 
 
 24
 Another appeal followed, this one by the sanctioned lawyers, bringing us to a total of three orders under review today.
 
 II. Discussion
 A. Travelers' 1994 Action
 
 25
 We begin with the district court's order declining jurisdiction over the 1994 action. We do not reach the merits of the controversy here, however, because we conclude that we lack jurisdiction over this appeal.[7]
 
 
 26
 1. The Absence of Final Judgment. An appeal of right may be taken only by filing a valid notice of appeal. F.R.A.P. 3(a)(1). Once a notice of appeal takes effect, the district court loses jurisdiction over the matter placed before the appellate court. The notice of appeal in this case did not, however, divest the district court of jurisdiction at the time it was filed because there was then a pending motion for reconsideration. F.R.A.P. 4(a)(4)(B)(i). The question is whether the notice of appeal was perfected by events subsequent to its filing but before the filing of the amended complaint containing the reimbursement claim.
 
 
 27
 Mydrin urges us to answer this question in the affirmative. Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), Mydrin argues, the notice of appeal became effective, and the district court lost jurisdiction, as soon as the court denied Travelers' motion for reconsideration of the dismissal order. Ordinarily, we would agree. But here there were unusual circumstances that call into question the finality of the court's order denying reconsideration.
 
 
 28
 The same day the district court issued that order, it issued the OSC requesting that Travelers properly plead diversity. The clear implication of the OSC is that Travelers was given leave to amend its complaint with respect to diversity jurisdiction, and given the timing of the OSC, such amendment could not have been due until after the motion for reconsideration had been denied.
 
 
 29
 In WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc), we held that if a plaintiff has been given leave to amend its complaint, "[a] further district court determination [constituting final judgment] must be obtained" before an appeal may be brought. Id. at 1136. Thus, where, as here, the district court makes "statements clearly contemplating that an amendment [may] be made," there can be no finality, and no appeal, until a further, final judgment is entered. Id. at 1335. Because in this case no final judgment was entered after the OSC granting leave to amend, no appeal could lie, and the district court had jurisdiction over Travel-ers' motion to replead its reimbursement claim.[8]
 
 
 30
 2. The Time-of-Filing Rule. Having determined that we lack jurisdiction over this appeal, we must nevertheless address certain issues raised here because their resolution will affect the nature of the district court proceedings after dismissal of this first appeal.
 
 
 31
 At the heart of Travelers' challenge is its claim for reimbursement, which, according to Travelers, renders federal jurisdiction mandatory over the entire action. As recounted above, the reimbursement claim was dismissed by Travelers in the joint stipulation submitted to Judge Real, then resuscitated after Judge Baird made clear her intention to dismiss Travelers' claim for declaratory relief. By Travelers' lights, the demise and resurrection of the reimbursement claim ought to be disregarded. That is so, according to Travelers, because the district court's decision regarding discretionary jurisdiction must be based on the facts as they existed at the time the complaint was filed. Therefore, Travelers contends, Judge Baird should have assumed when assessing her jurisdiction that a reimbursement claim was properly before her since such a claim was pled in Travelers' original complaint.
 
 
 32
 In the present posture of this appeal--i.e. , because appellate jurisdiction is lacking--Travelers' argument takes on a different significance than the one anticipated in the parties' briefing. If Travelers is correct that post-filing events are not relevant to the assessment of discretionary jurisdiction, then the motion for leave to amend to add the reimbursement claim becomes moot for purposes of this appeal. We would therefore remand to the district court only for the limited, ministerial purpose of entering final judgment, so that we could decide now how the presence of the reimbursement claim affects discretionary jurisdiction. If, however, Travelers is incorrect, then the district court would have to decide Travelers' motion for leave to replead the reimbursement claim, a decision we would review for abuse of discretion. Bly-Magee v. California, 236 F.3d 1014, 1017 (9th Cir. 2001). In that circumstance, the appeal could not proceed until the district court acts on that motion on its merits and then enters a final judgment.
 
 
 33
 There is some authority for Travelers' contention that courts assessing discretionary jurisdiction should look to the facts extant when the complaint was filed. See Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 755-56 (9th Cir. 1996) (" `[T]he propriety of the district court's assumption of jurisdiction is judged as of the time of filing, not the time of appeal.' ") (quoting Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 800 (9th Cir. 1995)), both (Golden Eagle and Karussos) overruled on other grounds by Government Employees Insurance Co. v. Dizol, 133 F.3d 1220, 1227 (9th Cir. 1998) (en banc); Maryland Casualty Co. v. Knight, 96 F.3d 1284, 1289 n.5 (9th Cir. 1996) ("The propriety of thedistrict court's exercise of jurisdiction is judged as of the time of filing.").
 
 
 34
 These cases, however, are not controlling here. To begin with, the cases applying the time-of-filing rule were decided in the pre-Dizol regime, in which the district court was required sua sponte to make findings in support of its exercise of discretionary jurisdiction. See, e.g., St. Paul Fire & Marine Ins. Co. v. F.H., 117 F.3d 435, 437 (9th Cir. 1997). Not so after Dizol, which held that such findings are necessary only if a party moves the court to decline jurisdiction. 133 F.3d at 1227. Krieger suggests that the time-of-filing rule did not survive this change unaffected. 181 F.3d at 1119 ("Under Dizol, . . . the court was entitled to evaluate the motion to [decline jurisdiction] under the circumstances existing at the time the issue was raised rather than at the time of filing[of the complaint].").
 
 
 35
 In any event, the time-of-filing rule--or after Dizol and Krieger, perhaps, the time-of-motion rule--was not meant to be invoked in the context in which Travelers now urges us to apply it. The purpose of the rule is to promote judicial economy and to advance the causes of comity and federalism by avoiding needless federal-court resolution of state-law questions. Karussos, 65 F.3d at 799. The cases on which Travelers relies have applied the rule to only one changed condition: the termination of parallel state-court proceedings. No case has held that changes to the scope or content of the federal litigation itself are not pertinent to the exercise of Declaratory Judgment Act jurisdiction over that very action.
 
 
 36
 No valid purpose--such as judicial economy, comity, or federalism--would be served by compelling the district court to disregard Travelers' voluntary dismissal of its reimbursement claim. Indeed, we encourage district courts assessing discretionary jurisdiction to take note of all existing circumstances internal to the lawsuit in front of them that bear on the jurisdictional issue. In First State Insurance Co. v. Callan Associates, Inc., 113 F.3d 161 (9th Cir. 1997), for example, we reversed the dismissal of a declaratory judgment action, noting that the parties' Joint Case Management Conference Statement revealed a claim for recission over which jurisdiction was mandatory. Id. at 163.
 
 
 37
 Similarly, in this case we conclude that the district court properly took account of Travelers' dismissal of its reimbursement claim when assessing discretionary jurisdiction. It is for the district court, then, to determine whether Travelers may replead the reimbursement claim in its amended complaint.[9]
 
 B. Mydrin's Removed Action
 
 38
 Turning to the second appeal on today's docket, we now consider whether the district court properly remanded the removed action to state court.[10] We review the court's remand order for abuse of discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995). Whether the district court has mandatory jurisdiction over the reimbursement claim is a question of law that we review de novo. General Dynamics Co. v. United States, 139 F.3d 1280, 1282 (9th Cir. 1998).
 
 
 39
 Travelers contends that the district court has mandatory jurisdiction over the reimbursement counterclaim in this action, and that therefore the court must accept jurisdiction over the claim for declaratory judgment.
 
 
 40
 1. Background. Our cases concerning the scope of the district court's discretion to decline jurisdiction over declaratory claims joined with other causes of action have been less than crystal clear. In general, we have applied the principle that "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Dizol, 133 F.3d at 1225; see also Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir. 1991); Maryland Cas. Co., 96 F.3d 1284; St. Paul, 117 F.3d 435; Snodgrass v. Provident Life and Acc. Ins. Co., 147 F.3d 1163 (9th Cir. 1998) (per curiam).
 
 
 41
 On two occasions, however, we have concluded that the presence of claims for monetary relief did not require the district court to accept jurisdiction under the Declaratory Judgment Act. Karussos, 65 F.3d 796 (9th Cir. 1995); Golden Eagle, 103 F.3d 750 (9th Cir. 1996).[11] Both cases involved claims for declaratory judgment and contribution brought by an insurance company against another insurance company, seeking adjudication of their respective obligations to a third party policyholder with respect to underlying litigation. Both times we concluded that, despite requests for monetary relief, the actions were primarily declaratory in nature and therefore jurisdiction remained discretionary.
 
 
 42
 In Snodgrass, after the general clarification of this area of law provided by en banc consideration in Dizol , we offered the following guidance to district courts seeking to determine whether jurisdiction over actions with both declaratory and monetary claims remained discretionary under Karussos, or was rendered mandatory under the principle articulated in Dizol: "The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." Snodgrass, 147 F.3d at 1167-68; see also id. at 1167 n.3 ("Karussos does not control where . . . independent claims for monetary relief are joined with a request for declaratory judgment."); St. Paul Fire, 117 F.3d at 438 n.2 (Karussos does not apply "where the damages claim is a counterclaim independently sustainable under diversity jurisdiction.").
 
 
 43
 It appears the district court believed that, for purposes of this analysis, two claims are "independent of " one another only if one can be resolved without disposing of the legal issues raised in the other. Thus, the court determined that the reimbursement claim here was not independent of the declaratory claim, but rather "derivative" of it. We do not believe this is the proper analysis. A breach of contract claim could be deemed derivative of a declaratory claim raising the same substantive questions, yet the presence of the breach of contract claim would affect the district court's discretionary jurisdiction. Dizol, 133 F.3d at 1225. Analogously, the rescission claim found to exist in Callan required the court to travel through the same legal issues presented when the claim was construed as one for declaratory relief, yet we found jurisdiction to be mandatory in that case. Callan, 113 F.3d 161.
 
 
 44
 2. Analysis. The proper analysis, then, must be whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed. In other words, the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief.
 
 
 45
 Here, the district court's subject matter jurisdiction over Travelers' counterclaim for reimbursement is not in dispute.[12] So the question we face is whether the request for reimbursement could have been sustained in federal court in the absence of any claim for declaratory relief. If it could, then under the "general rule" explained in Dizol, the district court abused its discretion by remanding to state court. If it could not, then the remand was proper under Karussos and Golden Eagle.
 
 
 46
 An insurance company's right to seek reimbursement for certain defense costs already expended in underlying litigation, such as Travelers seeks here, was declared by the California Supreme Court in Buss v. Superior Court , 16 Cal. 4th 35 (1997). Travelers argues that this right--arising from the equitable doctrine of restitution, and perhaps from contractual principles as well--is independent of any separate statutory right to a declaratory judgment. Id. at 50-52 & n.13. Thus, according to Travelers, "[i]f the Declaratory Judgment Act were simply repealed, or had failed to exist, California law would still recognize a right to recover monetary damages under Buss."
 
 
 47
 The procedural posture of Buss does little to support Travelers' argument that reimbursement claims are wholly independent of declaratory claims. In Buss, the insurance company "prayed for relief including a declaration that it did indeed have a right to obtain reimbursement, and an order therefor . . . ." Id. at 45. We have found numerous additional insurance-coverage actions conjoining requests for declaratory relief with requests for reimbursement. See, e.g., St. Paul Mercury Ins. Co. v. Ralee Engineering Co., 804 F.2d 520, 521 (9th Cir. 1986); American Motorists Insurance Co. v. Superior Court, 68 Cal. App. 4th 864, 868 (Cal. Ct. App. 1998); Venture v. LMI Insurance Co., 66 Cal. App. 4th 478, 490 (Cal. Ct. App. 1998); Western Employees Ins. Co. v. Arciero & Sons, Inc., 146 Cal. App. 3d 1027, 1029 (Cal. Ct. App. 1983).
 
 
 48
 What we have not found, however, is an indication that this pattern reflects anything but the practical circumstance that an insurance company seeking reimbursement of defense costs already expended is likely also to want an assurance in the form of declaratory relief that it will not owe future defense costs or be required to indemnify the insured for liability. We can see no reason, in other words, why a reimbursement claim must be joined with a claim for declaratory relief. As the California Supreme Court explained,"[t]he insurer . . . has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual." Buss , 16 Cal. 4th at 51. Reimbursement claims are therefore based on the equitable doctrine of restitution. Id. at 50-51. Traditionally, the holder of an equitable right to monetary relief could vindicate that right in the form of an action in contract, tort, or assumpsit, as circumstances require. Rest., Restitution S 5, at 22. Satisfaction of equitable rights for monetary relief has not historically been predicated on favorable disposition of a claim for declaratory judgment. Accordingly, it appears that under California law, Travelers' request for reimbursement is independent of the request for declaratory relief.
 
 
 49
 3. Other Factors Supporting Federal Jurisdiction. Our ruling that the district court must accept jurisdiction over the claim for declaratory relief does not, however, rest solely on the fact that the joined state-law reimbursement claim appears under state law to be independent of the declaratory claim in the requisite sense. The unique circumstances of this case present additional forceful reasons for retaining federal jurisdiction over the declaratory claim.
 
 
 50
 The controversy over Mydrin's rights to defense and indemnity began almost seven years ago, and the parties are still at loggerheads over whether the issue will be decided by a federal or state tribunal. Though we fully support our previous decisions in this matter, we cannot ignore our own responsibility for the delay. When Judge Real first reached the merits of the controversy, we faulted him for failing to pro-vide adequate reasons supporting his exercise of discretionary jurisdiction. Later, however, in Dizol, we determined that district courts need not articulate such reasons when, as was at first true in Judge Real's case, jurisdiction is not challenged. Had Dizol been decided at the time of the first appeal, this case in all probability would have been decided on the merits in federal court long ago.
 
 
 51
 We note as well that, while Mydrin artfully pleaded its state-court complaint as one for declaratory relief alone, one of its causes of action is not far removed from a claim for breach of contract. The underlying suits against Mydrin brought by Western had already been settled when Mydrin filed its complaint in the removed action, while the suit brought by Royalty was still pending. Thus, Mydrin commenced its state-court action with full knowledge of the amount of damages resulting from Travelers' alleged breach with regard to the Western suit, but with incomplete knowledge of the damages that would flow from the Royalty suit.
 
 
 52
 Under these circumstances, an aggrieved party would ordinarily file one breach of contract claim (to remedy the breach for which damages were known), and one declaratory judgment claim (addressing the breach for which damages would depend on future, contingent events). Mydrin, however, brought two declaratory judgment claims, thereby avoiding the mandatory federal jurisdiction that would have attached to the breach of contract claim upon removal by Travelers.
 
 
 53
 Though we do not agree with Travelers that Mydrin's declaratory claim is merely a " `breach of contract' damages claim in very thin disguise,"[13] we do find that Mydrin's artful pleading implicates one of the factors affecting the propriety of discretionary jurisdiction. As we have explained, district courts "should discourage litigants from filing declaratory actions as a means of forum shopping." Dizol , 133 F.3d at 1225. While the circumstances here are perhaps different than those anticipated when those words were first written, we nonetheless find the principle to be a sound one as applied in this context. Forum shopping through the filing of declaratory judgment actions is no more appropriate when it favors state over federal jurisdiction than it is when it favors the reverse. Accordingly, we regard the form of Mydrin's pleading as a consideration favoring retention of federal jurisdiction.
 
 
 54
 To sum up, we find that Travelers' reimbursement claim is, in all probability, sufficiently independent under California law to trigger mandatory federal jurisdiction. In any event, in view of all of the circumstances addressed above, we conclude that the district court abused its discretion by remanding the removed action to state court.[14]
 
 C. Rule 11 Sanctions
 
 55
 We turn now to the district court's decision to impose Rule 11 sanctions on Travelers' counsel ("Counsel").
 
 
 56
 1. Background. In pertinent part, Rule 11 prohibits lawyers from filing papers with the court that are: (1) "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation," or (2) not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(1)-(2). In reviewing sanctions imposed under Rule 11, we "review findings of historical fact under the clearly erroneous standard, the determination that counsel violated the rule under a de novo standard, and the choice of sanction under an abuse of discretion standard." Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996).
 
 
 57
 The application of Rule 11 is a task that requires sensitivity to two competing considerations. On the one hand, the perception underlying the Rule is that on occasion attorneys engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system, and that neither the other parties nor the courts should have to abide such behavior or waste time and money coping with it. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts.") On the other hand, both the Rule itself and our application of the Rule recognize that our system of litigation is an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task. Judges therefore should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients. See Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999) ("We are cognizant of the unique dilemma that sanctions present. On the one hand, a court should discipline those who harass their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules.").
 
 
 58
 In recognition of the latter, critical concern, Rule 11 sanctions may be imposed only in response to claims that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law." Fed. R. Civ. P. 11(b)(2). This standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion. In that circumstance--unlike the situation in which an opposing party moves for Rule 11 sanctions --there is no "safe harbor" in the Rule allowing lawyers to correct or withdraw their challenged filings. See Fed. R. Civ. P. 11(c)(1)(A) (providing "safe harbor" to withdraw filing where an opposing party moves for Rule 11 sanctions); compare Fed. R. Civ. P. 11(c)(1)(B) (requiring court acting on its own motion merely to enter an order to show cause why the Rule has not been violated). In light of this important distinction, sua sponte sanctions "will ordinarily be imposed only in situations that are akin to a contempt of court ." Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1999) (quoting Fed. R. Civ. P. 11 adv. cmte. notes, 1993 am.) (emphasis added); accord Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329 (2d Cir. 1995).
 
 
 59
 2. Analysis. The district court in its Order Imposing Rule 11 Sanctions provided four reasons for sanctioning Travelers' lawyers, all stemming from the Notice of Related Cases ("Notice") they filed in connection with the removed action.[15] First, the district court determined that Counsel had made what the court deemed "selective disclosures" in its notice of related cases. Specifically, the court faulted Counsel for not stating in the notice that the removed action had to be transferred to Judge Baird because she was already presiding over the 1994 action. Second, sanctions were appropriate, the district court concluded, because of Counsel's unfounded statement that Judge Real was the appropriate judge to hear the removed action. Third, the district court decided that Travelers' lawyers mischaracterized, in the Notice, the reason that the 1994 action was taken away from Judge Real, because they "should have disclosed that the Ninth Circuit order that Judge Real could not hear the declaratory claim because he might harbor prejudice against Mydrin." Finally, the district court charged that Counsel deceptively "buried " the Ninth Circuit opinion containing the reassignment order in a stack of attachments to the notice, rather than describing in the notice itself "the Ninth Circuit's holding that Judge Real shall not preside over this suit."
 
 
 60
 There can be no real doubt that Travelers' lawyers were zealously trying to get the case before a judge they perceived to be favorably disposed to Travelers in the coverage dispute, and that their Notice was far from forthcoming concerning the prior history of the prolonged federal litigation regarding this coverage dispute. Nonetheless, while Counsel's actions are certainly no model of responsible advocacy, those actions were, on close examination, not so egregious as to merit sua sponte sanctions.
 
 
 61
 In the first place, the district court erred in concluding that two local rules of the Central District, C.D. Cal. G.O. 224 and C.D. Cal. Local R. 4.3.1 (requiring that a case "identical" to one already pending before a certain judge be heard by that judge), mandated that the Notice of Related Cases should have specified that the removed action had to be assigned to Judge Baird. Counsel had at least a good faith basis for arguing that the cases were not "identical." Nearly four years before Counsel filed the Notice on January 11, 1999, Travelers had voluntarily dismissed the reimbursement claim without prejudice in the original action. Because Travelers had asserted a reimbursement cause of action in the removed action as a counterclaim, Counsel had nonfrivolous grounds for arguing that the 1994 action and the removed action were not identical at the time they filed the notice.
 
 
 62
 Indeed, we have concluded above that the distinction between a case that includes a reimbursement claim and one that does not can be all-important when a district court decides whether or not it is required to retain jurisdiction over a diversity action including a request for declaratory relief. Moreover, the district court had itself specifically recognized in its Order of December 7, 1998, that, had the reimbursement claim remained in the original case, the district court may well have been compelled to retain jurisdiction over that case, including over the claim for declaratory relief.[16] Counsel were therefore entitled to regard the difference between a case that included a claim for reimbursement and one that did not as critical for purposes of determining the propriety of retaining jurisdiction, and so to argue.
 
 
 63
 The district court, of course, in later remanding the removed action, concluded otherwise concerning the pertinence of the reimbursement claim. For purposes of judging whether Counsel's actions in January were contemptuous or nearly so, however, it is the district court's then-extant legal analysis, announced just a month before Counsel filed the Notice of Related Cases, that is relevant.
 
 
 64
 The fact that the district court later altered its views concerning the key legal issue and thereupon concluded--in the same order in which the district court announced its new legal analysis concerning the impact of the reimbursement claim on the jurisdictional issue--that Rule 11 sanctions were appropriate illustrates, if anything, one of the reasons courts must be cautious in imposing Rule 11 sanctions. Even when we begin with an open mind, as we are sure Judge Baird did, many of us, lawyers and judges alike, have difficulty in recognizing opposing legal arguments as plausible once we have thought through an issue and come to a firm conclusion regarding the proper legal principles applicable to a particular situation.
 
 
 65
 Counsel also had some plausible basis, albeit quite a weak one, to argue that the removed action should be heard before Judge Real despite the reassignment of the 1994 action by the previous panel of this court.
 
 
 66
 The district court's complaint about the burying of the Ninth Circuit's reassignment order in attachments to the pleadings notwithstanding, Counsel did discuss the reassignment in its pleadings in addition to attaching the order. In the last subsection of the Notice, Counsel specifically informed the district court of the earlier reassignment and discussed its significance.
 
 
 67
 True, it would have been far preferable, both from the point of view of properly informing the court and from the point of view of effective advocacy, for Counsel to have begun rather than ended the Notice by providing this critical information. Candor usually goes farther than contrivance in constructing a convincing argument. A manipulative order of presentation designed to downplay the pertinence of information or legal precedent unfavorable to one's client is, however, an unfortunately familiar device to both writers and readers of legal briefs. As long as the critical information is not absent altogether, lawyers may not be sanctioned for such misjudgments.
 
 
 68
 Nor was Counsel's discussion in the Notice of the reasons for the reassignment so fast-and-loose as to be sanctionable. The Notice quoted the ultimate reason this court gave for reassigning the case away from Judge Real--that he may " `have substantial difficulty in putting his previously expressed views out of his mind.' " Judge Baird read this comment in context as pertaining to both the jurisdictional issues and the merits, not only to the jurisdictional issue. We agree with her that that is the better reading of this court's R&D Latex opinion. See 98 F.3d at 920 ("Judge Real has twice granted summary judgment to [Travelers] and has failed to articulate his reasons for exercising declaratory jurisdiction. In light of the history of this litigation, we conclude that if this case were before him for a third time he would have substantial difficulty in putting his previously expressed views out of his mind.") Nonetheless, Counsel's narrower reading of this court's concerns in reassigning the case is not entirely beyond the pale. The body of the R&D Latex opinion was devoted almost entirely to the district court's failure to explain its jurisdictional ruling. On the merits issue, this court in R&D Latex stated only, in a single sentence, that summary judgment should not have been granted because there were genuine issues of material fact. Reversal for that reason, standing alone, would almost certainly not have led to reassignment of the case on remand.
 
 
 69
 After noting that the case had been reassigned, the Notice went on to argue that because the removed action took the discretionary jurisdiction issue out of the case, that action did not present the issue that had precipitated the previous panel's decision to reassign the case. Counsel alternatively suggested that the case could be assigned to Judge Baird to decide any jurisdictional challenge raised by Mydrin, and then reassigned on the merits to Judge Real because of his greater familiarity with the merits. The suggestion of sequential assignments, albeit unusual and probably impractical, indicates at least some recognition that Judge Baird was the appropriate judge to decide any jurisdictional issue. We note as well that the local rules permit the assignment of cases as related even if the earlier case has been concluded, see C.D. Cal. Local R. 4.3.1(a), (c) (requiring filing of notice with respect to cases "previously filed or currently pending"), and that Judge Real was still presiding over a separate coverage claim brought by another insurer (Birmingham Fire Insurance) against Mydrin arising from the same underlying state-court litigation.
 
 
 70
 Looking at all the circumstances, we conclude that while Judge Baird had every reason to disapprove of the manner in which Counsel presented information to the district court concerning the appropriate assignment of the case, the Notice was in neither purpose nor substance "akin to contempt." Sua sponte Rule 11 sanctions were therefore inappropriate. Barber, 146 F.3d at 711; Hadges , 48 F.3d at 1329. We reverse the district court's sanctions order.
 
 
 71
 D. Travelers' Request for Reassignment from Judge Baird
 
 
 72
 Finally, Travelers asks that upon remand, the 1994 action and the removed action both be reassigned to yet another judge.
 
 
 73
 The supervisory powers conferred on us by 28 U.S.C. S 2106 permit us to reassign cases when we remand them. Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.3d 176, 191 (9th Cir. 1989). We exercise that authority, however, only in "rare and extraordinary circumstances." Id.
 
 
 74
 In deciding whether reassignment is appropriate, we make two inquiries. First, we ask whether the district court has exhibited personal bias requiring recusal from a case. United States v. Sears, Roebuck & Co., 785 F.2d 777, 779-80 (9th Cir. 1986). Absent a showing of personal bias, we must decide whether "unusual circumstances" warrant reassignment. Id. at 780. The factors for determining "unusual circumstances" are:
 
 
 75
 (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 76
 Id.; accord, R&D Latex, 141 F.3d 916, 920 (9th Cir. 1998).
 
 
 77
 Travelers does not argue bias, but does maintain that Judge Baird would have substantial difficulty putting her previous views out of her mind. After thoroughly reviewing the record, we are satisfied that that is not the case, and that reassignment is not warranted. We therefore deny Travelers' request to reassign this case from Judge Baird.
 
 CONCLUSION
 
 78
 The appeal from the 1994 action is DISMISSED for lack of jurisdiction. The district court's order declining jurisdiction over the removed action and remanding to state court is REVERSED, and the case is REMANDED to Judge Baird for further proceedings. The district court's award of Rule 11 sanctions is REVERSED.
 
 
 
 Notes:
 
 
 [1]
 Aetna was the relevant insurer for most of this litigation, until that company was acquired by Travelers. For simplicity, we do not distinguish between Aetna and Travelers in this opinion.
 
 
 [2]
 United and Birmingham are not parties to this appeal.
 
 
 [3]
 As we have explained, "the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority. The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Government Employees Insurance Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc) (internal quotation marks and citations omitted).
 
 
 [4]
 Travelers actually submitted two amended complaints at the same time, one merely pleading diversity as the OSC had requested, and the other pleading diversity and adding the claim for reimbursement as well.
 
 
 [5]
 In support of this argument, Travelers relied inter alia on our recent decision in Dizol, which observed that "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Dizol, 133 F.3d at 1225.
 
 
 [6]
 Judge Baird chose not to sanction the junior associate on the case, based on his colleagues' representations that he worked solely in a research capacity, and lacked decision-making responsibilities.
 
 
 [7]
 As a practical matter, we recognize that the parties may choose to drop the 1994 action in light of our disposition of the appeal from the removed action. See infra. That is, of course, their prerogative, not ours, so we assume for present purposes that the 1994 action will continue to be litigated.
 
 
 [8]
 Our conclusion that we lack jurisdiction is based on the absence of a final judgment, not on the absence of diversity. We are satisfied from the materials in the record that complete diversity exists.
 
 
 [9]
 Even if we had jurisdiction, we could not resolve this issue here because it calls for an exercise of discretion by the district court. Pursuant to Federal Rule of Civil Procedure 15(a), Travelers may amend its complaint "only by leave of court or by written consent of the adverse party; . . . leave shall be freely given when justice so requires." Proffered amendments may be rejected on grounds of undue delay, among others. See, e.g., Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388-89 (9th Cir. 1990); Parker v. Joe Lujan Enters., Inc., 848 F.2d 118, 121 (9th Cir. 1988); M/V American Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1492 (9th Cir. 1983). Given (1) Travelers' voluntary withdrawal of its reimbursement claim; (2) the several year delay in reasserting it; and (3) the fact that it was revived only after the district court decided to dismiss this case, and pursuant to an OSC plainly intended for other purposes, we could not say that the district court would abuse its discretion as a matter of law by disallowing the amendment.
 
 
 [10]
 We are not prevented from reviewing this decision by 28 U.S.C. S 1447(d), which states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal," because that provision does not apply to remands based on the district court's refusal to exercise discretionary jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988).
 
 
 [11]
 In Golden Eagle, this court nevertheless reached the merits of the controversy, finding the retention of federal jurisdiction to have been "harmless error." 103 F.3d at 756.
 
 
 [12]
 Mydrin argues that the district court should ignore the counterclaim when assessing its discretionary jurisdiction, contending that "[d]efendants cannot create federal jurisdiction over a removed case through their own actions." The reimbursement counterclaim, however, does not "create federal jurisdiction." Rather, the district court's jurisdiction over the removed declaratory claim was based on diversity. The issue here is not whether the district court had subject matter jurisdiction over the removed action--a question to which Myrdrin's argument would be relevant--but whether the district ought to retain jurisdiction.
 
 
 [13]
 Travelers argues that this conclusion is compelled by our decision in Callan. 113 F.3d 161. That case, however, is distinguishable. In Callan, we determined that an action styled as one for declaratory relief was in fact one for rescission, a claim over which federal jurisdiction is mandatory once diversity is established. We explained that "[r]escission [was] implicit as a remedy in the complaint." Id. at 163. Here, in contrast, there is no implicit claim for money damages in Mydrin's pleadings. Rather, Mydrin has opted to forego at present any right it may hold to a monetary remedy, though we may assume that it will seek to enforce that right in the future, as California law permits. Lortz v. Connell, 273 Cal. App. 2d 286, 300-01 (Cal. Ct. App. 1969).
 
 
 [14]
 Because the removed action will remain in federal court, we need not address Travelers' argument that the 30-day time-limit prescribed by 28 U.S.C. S 1447 barred Mydrin's motion to remand.
 
 
 [15]
 Central District Local Rule 4.3.1 requires lawyers to file such notices whenever a case appears to arise from the same facts or events or present substantially similar questions of law or fact to "previously filed or currently pending" cases in the Central District. C.D. Cal. Local R. 4.3.1(a), (c). Judge Baird agreed that because of this rule, Counsel were correct to file the notice and include in it Judge Real's cases (including the two reassigned cases and the one he still had before him between Mydrin and Birmingham).
 
 
 [16]
 We note that the district court's Order of January 25, 1999 denying reconsideration reiterated its earlier conclusion that as long as there was a reimbursement claim in the case, "the court could not decline jurisdiction" over the declaratory judgment claim. The district court's decision on reconsideration of the original action therefore provided no reason for Counsel to revise the Notice of Related Cases in this regard.